SCHNADER HARRISON SEGAL & LEWIS LLP
LISA J. RODRIGUEZ
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
Phone: (856) 482-5222
Fax: (856) 482-6980
ljrodriguez@schnader.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KNOLL INC.,<br><br>                          Plaintiff,<br><br>          v.<br><br>MODWAY, INC.;<br>LEXMOD, INC.; and<br>MENACHEM T. GREISMAN<br>                          Defendants. | CIVIL ACTION<br>No. 20-CV-16676 (FLW-DEA)<br><br><u>DEMAND FOR JURY TRIAL</u> |

## DEFENDANTS' ANSWER TO
## THIRD AMENDED COMPLAINT
## AND COUNTERCLAIMS

Defendants Modway, Inc. ("Modway"), LexMod, Inc. ("LexMod"), and Menachem T. Greisman (collectively, "Defendants") hereby answer Plaintiff Knoll Inc.'s ("Knoll" or "Plaintiff") Third Amended Complaint as follows. The paragraph numbers of this Answer correspond to the paragraph numbers in the Third Amended Complaint:

## JURISDICTION AND VENUE

1.     Defendants admit that Knoll purports to assert claims for trade dress and trademark infringement under 15 U.S.C. § 1125(a), false designation of origin and federal unfair competition under 15 U.S.C. § 1125(a), and unfair competition under New Jersey Stat. § 56:4-1 and New Jersey common law. Defendants further admit that this Court has subject matter jurisdiction over the action. The remainder of this paragraph contains legal conclusions and contentions as to which no response is necessary.

2.     Defendants do not object to the exercise of personal jurisdiction in this case. Defendants admit that LexMod and Modway have their principal places of business in East Windsor, New Jersey, and that LexMod and Modway have sold (and offered for sale) products accused of infringement in this action in New Jersey. Defendants deny the remaining allegations of this paragraph.

3.      Defendants admit that venue is proper in this District, and that LexMod and Modway have their principal places of business in East Windsor, New Jersey.  Defendants deny the remaining allegations of this paragraph.

## THE PARTIES

4.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.

5.      Defendants admit that Modway is a New York corporation with its principal place of business at 329 Wyckoff Mills Rd., East Windsor, New Jersey 08520.  Defendants deny the remaining allegations of this paragraph.

6.      Defendants admit that LexMod is a Florida corporation with its principal place of business at 329 Wyckoff Mills Rd., East Windsor, New Jersey 08520.  Defendants deny the remaining allegations of this paragraph.

7.      Defendants admit that Mr. Greisman resides at 256 Sullivan Place, Brooklyn, New York 11225, and that Mr. Greisman is the CEO of Modway and the President of LexMod.  Defendants deny the remaining allegations of this paragraph.

8.      Defendants admit that, in 2020, Modway completed a transaction to open a distribution facility in Hesperia, California, that Modway began operations in that facility in 2022, and that, in connection with this facility, Mr. Greisman

stated to a journalist that "[w]e look forward to developing a strong partnership with the City of Hesperia and County of San Bernardino."  Defendants deny the remaining allegations of this paragraph.

9.    Defendants admit the allegations in this paragraph.

10.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.

11.    Defendants admit the allegations in this paragraph.

12.    Defendants admit that Emeco Industries, Inc. filed a lawsuit against East End N.Y. Imports, Inc., Sugar Stores, Inc., Mr. Greisman, and other defendants in 2013.  The complaint filed by Emeco Industries, Inc. speaks for itself, and Defendants admit that the complaint alleges that Mr. Greisman, among others, "exercised control over the Corporate Defendants with respect to the infringing and unlawful conduct."  Defendants otherwise deny each of Knoll's further allegations that characterize the document.  Defendants further admit that Mr. Greisman was one of the defendants in that matter who signed a "Stipulation Requesting Entry of Consent Judgment and Permanent Injunction; Consent Judgment and Permanent Injunction," in which the defendants stated that they "deny each and every one of Plaintiff's allegations."  That document speaks for

itself, and Defendants therefore deny each of Knoll's allegations that characterize the document.  Defendants deny the remaining allegations of this paragraph.

## GENERAL ALLEGATIONS

13.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.

14.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.

## <u>Knoll's Saarinen Collection Trade Dress</u>

15.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.

16.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of this paragraph, and therefore deny the same.  Defendants also deny that Knoll has identified any trade dress in this paragraph.  The remainder of this paragraph contains legal conclusions and contentions as to which no response is necessary.

17.     Defendants deny that Knoll has identified any trade dress in this paragraph.  The remainder of this paragraph contains legal conclusions and contentions as to which no response is necessary.

18.     Defendants deny that Knoll has identified any trade dress in this paragraph and, to the extent any trade dress has been identified, deny that it is distinctive or nonfunctional.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

19.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.

20.     Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

21.     Defendants deny that Knoll has identified any trade dress in this paragraph and, to the extent any trade dress has been identified, deny that it is distinctive, iconic, or famous or that Knoll is the exclusive source of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore

deny the same. Defendants further deny that Knoll has for any consistent period of time displayed the side profile of the pedestal table in connection with the Knoll brand.

22.     Defendants deny that Knoll has identified any trade dress in this paragraph. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

23.     Defendants deny that Knoll has identified any trade dress in this paragraph. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

24.     Defendants deny that Knoll has identified any trade dress in this paragraph. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

25.     Defendants deny that Knoll has identified any trade dress in this paragraph. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

26.    Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

27.    Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

28.    Defendants deny the allegations in this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

29.    Defendants deny the allegations in this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

30.    Defendants admit that chairs and tables can have different forms, structures, and shapes, that alternative forms, structures, and shapes for chairs and tables exist, and that the images included in this paragraph depict tables and/or chairs.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

31.    Defendants admit that alternative designs for chairs and tables exist, and that designers make decisions when creating a chair or table.  Defendants deny

the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

32.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph regarding what Knoll created, how pieces in Knoll's products are made, and Knoll's intentions or goals, and therefore deny the same.  Furthermore, the allegations in this paragraph regarding the simplicity or complexity of the referenced design, and regarding how expensive, complex, or detailed it might be to manufacture such design, are so conclusory and vague that Defendants are unable to form a belief as to the truth of such allegations.  Defendants therefore deny the same.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

33.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and fourth sentences of this paragraph, and therefore deny the same.  Furthermore, the allegations in the second sentence of this paragraph are so conclusory and vague that Defendants are unable to form a belief as to the truth of such allegations.  Defendants therefore deny the same.  Defendants also deny that Knoll has identified any trade dress in this paragraph and, to the extent any trade dress has been identified, deny that it is

distinctive or nonfunctional.  The remainder of this paragraph contains legal conclusions and contentions as to which no response is necessary.

34.     Defendants deny that Knoll has identified any trade dress in this paragraph.  The remainder of this paragraph contains legal conclusions and contentions as to which no response is necessary.

35.     Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

36.     Defendants deny that Knoll has identified any trade dress in this paragraph and, to the extent any trade dress has been identified, deny that it is distinctive, iconic, or famous or that Knoll is the exclusive source of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

37.     Defendants deny the allegations in this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

38.     Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

39.    Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

40.    Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

41.    Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

42.    Defendants deny the allegations in this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

43.    Defendants admit that chairs can have different forms, structures, and shapes, that alternative forms, structures, and shapes for chairs exist, and that the images included in this paragraph depict chairs.  Defendants deny the remaining

allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

44.    Defendants admit that alternative designs for chairs exist, and that designers make decisions when creating a chair.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

45.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph regarding the composition of Knoll products, how such products are made, and Knoll's intentions or goals, and therefore deny the same.  Furthermore, the allegations in this paragraph regarding the simplicity or complexity of the referenced design, and regarding how expensive, complex, or detailed it might be to manufacture such design, are so conclusory and vague that Defendants are unable to form a belief as to the truth of such allegations.  Defendants therefore deny the same.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

## Knoll's Florence Knoll™ Lounge Collection Trade Dress

46.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences

of this paragraph, and therefore deny the same.  Furthermore, the allegations in the second and third sentences of this paragraph are so conclusory and vague that Defendants are unable to form a belief as to the truth of such allegations. Defendants therefore deny the same.  Defendants also deny that Knoll has identified any trade dress in this paragraph and, to the extent any trade dress has been identified, deny that it is distinctive or nonfunctional.  The remainder of this paragraph contains legal conclusions and contentions as to which no response is necessary.

47.     Defendants deny that Knoll has identified any trade dress in this paragraph.  The remainder of this paragraph contains legal conclusions and contentions as to which no response is necessary.

48.     Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

49.     Defendants deny that Knoll has identified any trade dress in this paragraph and, to the extent any trade dress has been identified, deny that it is distinctive, iconic, or famous or that Knoll is the exclusive source of it. Defendants are without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

50.    Defendants deny the allegations in this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

51.    Defendants deny that Knoll has identified any trade dress in this paragraph. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

52.    Defendants deny that Knoll has identified any trade dress in this paragraph. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

53.    Defendants deny that Knoll has identified any trade dress in this paragraph. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

54.    Defendants deny the allegations in this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

55.    Defendants admit that seats can have different forms, structures, and shapes, that alternative forms, structures, and shapes for seats exist, and that the

images included in this paragraph depict seats.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

56.    Defendants admit that alternative designs for seats exist, and that designers make decisions when creating a seat.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

57.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph regarding the composition of Knoll products, and how such products are made, and therefore deny the same.  Furthermore, the allegations in this paragraph regarding the simplicity or complexity of the referenced design, and regarding how expensive, complex, or detailed it might be to manufacture such design, are so conclusory and vague that Defendants are unable to form a belief as to the truth of such allegations.  Defendants therefore deny the same.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

## Knoll's Bertoia Collection Trade Dress

58.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence contained of this

14

paragraph, and therefore deny the same.  Defendants also deny that Knoll has identified any trade dress in this paragraph and, to the extent any trade dress has been identified, deny that it is distinctive or nonfunctional.  The remainder of this paragraph contains legal conclusions and contentions as to which no response is necessary.

59.    Defendants deny that Knoll has identified any trade dress in this paragraph.  The remainder of this paragraph contains legal conclusions and contentions as to which no response is necessary.

60.    Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

61.    Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

62.    Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

63.     Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

64.     Defendants deny that Knoll has identified any trade dress in this paragraph and, to the extent any trade dress has been identified, deny that it is distinctive, iconic, or famous or that Knoll is the exclusive source of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

65.     Defendants deny the allegations in this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

66.     Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

67.     Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

68.     Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

69.     Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

70.     Defendants deny the allegations in this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

71.     Defendants admit that chairs can have different forms, structures, and shapes, that alternative forms, structures, and shapes for chairs exist, and that the images included in this paragraph depict chairs.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

72.     Defendants admit that alternative designs for chairs exist, and that designers make decisions when creating a chair.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

73.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph regarding the composition of Knoll products, and how such products are made, and therefore deny the same.  Furthermore, the allegations in this paragraph regarding the simplicity or complexity of the referenced design, and regarding how expensive, complex, or detailed it might be to manufacture such design, are so conclusory and vague that Defendants are unable to form a belief as to the truth of such allegations.  Defendants therefore deny the same.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

## Knoll's Naguchi [sic] Cyclone™ Trade Dress

74.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and the allegations in this paragraph are so conclusory and vague that Defendants are unable to form a belief as to the truth of such allegations.  Defendants therefore deny the same.

75.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and the allegations in this paragraph are so conclusory and vague that Defendants are

unable to form a belief as to the truth of such allegations.  Defendants therefore deny the same.

76.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.

77.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.  Defendants also deny that Knoll has identified any trade dress in this paragraph and, to the extent any trade dress has been identified, deny that it is distinctive or nonfunctional.  The remainder of this paragraph contains legal conclusions and contentions as to which no response is necessary.

78.    Defendants deny that Knoll has identified any trade dress in this paragraph.  The remainder of this paragraph contains legal conclusions and contentions as to which no response is necessary.

79.    Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

80.    Defendants deny that Knoll has identified any trade dress in this paragraph and, to the extent any trade dress has been identified, deny that it is

distinctive, iconic, or famous or that Knoll is the exclusive source of it. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

81.    Defendants deny the allegations in this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

82.    Defendants deny that Knoll has identified any trade dress in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore deny the same.

83.    Defendants deny the allegations in this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

84.    Defendants admit that tables can have different forms, structures, and shapes, that alternative forms, structures, and shapes for tables exist, and that the images included in this paragraph depict tables.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

85.    Defendants admit that alternative designs for tables exist, and that designers make decisions when creating a table.  Defendants deny the remaining

allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional..

86.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph regarding the composition of Knoll products, and how such products are made, and therefore deny the same.  Furthermore, the allegations in this paragraph regarding the simplicity or complexity of the referenced design, and regarding how expensive, complex, or detailed it might be to manufacture such design, are so conclusory and vague that Defendants are unable to form a belief as to the truth of such allegations.  Defendants therefore deny the same.  Defendants deny the remaining allegations of this paragraph, deny that Knoll has identified any trade dress in this paragraph and deny that Knoll's alleged trade dress is non-functional.

87.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in the first sentence of this paragraph, and therefore denies the same.  Defendants deny the remaining allegations in this paragraph, and deny that Knoll has identified any cognizable trademark in this paragraph.

88.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore

deny the same.  Defendants also deny that Knoll has identified any cognizable trademark in this paragraph.

89.     Defendants deny the allegations in this paragraph, and deny that Knoll has identified any cognizable trademark in this paragraph.

## FIRST CLAIM FOR RELIEF

### (Trade Dress Infringement – Pedestal Trade Dress)
### (15 U.S.C. § 1125(a))

90.     The statement in Paragraph 90 is neither an averment nor allegation to which a response is required.  To the extent that a response is required, Defendants incorporate by reference their responses to the allegations contained in Paragraphs 1-89 as though fully set forth herein.

91.     Defendants admit that Knoll purports to assert a claim for trade dress infringement under 15 U.S.C. § 1125(a).

92.     Defendants admit that Knoll purports to include images in this paragraph that it claims are some of Defendants' products.  Defendants deny the remaining allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

93.     Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

94.     Defendants admit that Mr. Greisman is the CEO of Modway, and the President of LexMod.  Defendants deny the remaining allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

95.     Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

96.     Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

97.     Defendants deny the allegations in the first sentence of this paragraph. The remaining allegations of this paragraph contain legal conclusions and contentions about the Court's authority in this matter as to which no response is necessary.

98.     Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

99.     Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

## SECOND CLAIM FOR RELIEF
### (Trade Dress Infringement – Executive Trade Dress)
### (15 U.S.C. § 1125(a))

100.   The statement in Paragraph 100 is neither an averment nor allegation to which a response is required.  To extent that a response is required,

Defendants incorporate by reference their responses to the allegations contained in Paragraphs 1-99 as though fully set forth herein.

101.   Defendants admit that Knoll purports to include images in this paragraph that it claims are some of Defendants' products.  Defendants deny the remaining allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

102.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

103.   Defendants admit that Mr. Greisman is the CEO of Modway, and the President of LexMod.  Defendants deny the remaining allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

104.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

105.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

106.   Defendants deny the allegations in the first sentence of this paragraph. The remaining allegations of this paragraph contain legal conclusions and contentions about the Court's authority in this matter as to which no response is necessary.

107.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

108.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

**THIRD CLAIM FOR RELIEF**
**(Trade Dress Infringement – Knoll Lounge Trade Dress)**
**(15 U.S.C. § 1125(a))**

109.   The statement in Paragraph 109 is neither an averment nor allegation to which a response is required.  To the extent that a response is required, Defendants incorporate by reference their responses to the allegations contained in Paragraphs 1-108 as though fully set forth herein.

110.   Defendants admit that Knoll purports to include images in this paragraph that it claims are some of Defendants' products.  Defendants deny the remaining allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

111.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

112.   Defendants admit that Mr. Greisman is the CEO of Modway, and the President of LexMod.  Defendants deny the remaining allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

113.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

114.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

115.    Defendants deny the allegations in the first sentence of this paragraph. The remaining allegations of this paragraph contain legal conclusions and contentions about the Court's authority in this matter as to which no response is necessary.

116.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

117.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

## FOURTH CLAIM FOR RELIEF
### (Trade Dress Infringement – Bertoia Trade Dress)
### (15 U.S.C. § 1125(a))

118.    The statement in Paragraph 118 is neither an averment nor allegation to which a response is required.  To the extent that a response is required, Defendants incorporate by reference their responses to the allegations contained in Paragraphs 1-117 as though fully set forth herein.

119.    Defendants admit that Knoll purports to include images in this paragraph that it claims are some of Defendants' products.  Defendants deny the

remaining allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

120.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

121.    Defendants admit that Mr. Greisman is the CEO of Modway, and the President of LexMod.  Defendants deny the remaining allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

122.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

123.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

124.    Defendants deny the allegations in the first sentence of this paragraph. The remaining allegations of this paragraph contain legal conclusions and contentions about the Court's authority in this matter as to which no response is necessary.

125.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

126.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

**FIFTH CLAIM FOR RELIEF**
**(Trade Dress Infringement – Cyclone™ Trade Dress)**
**(15 U.S.C. § 1125(a))**

127.    The statement in Paragraph 127 is neither an averment nor allegation to which a response is required.  To the extent that a response is required, Defendants incorporate by reference their responses to the allegations contained in Paragraphs 1-126 as though fully set forth herein.

128.    Defendants admit that Knoll purports to include an image in this paragraph that it claims is one of Defendants' products.  Defendants deny the remaining allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

129.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

130.    Defendants admit that Mr. Greisman is the CEO of Modway, and the President of LexMod.  Defendants deny the remaining allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

131.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

132.    Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

133.   Defendants deny the allegations in the first sentence of this paragraph. The remaining allegations of this paragraph contain legal conclusions and contentions about the Court's authority in this matter as to which no response is necessary.

134.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

135.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress in this paragraph.

**SIXTH CLAIM FOR RELIEF**
**(Trademark Infringement)**
**(15 U.S.C. § 1125(a))**

136.   The statement in Paragraph 136 is neither an averment nor allegation to which a response is required.  To the extent that a response is required, Defendants incorporate by reference their responses to the allegations contained in Paragraphs 1-135 as though fully set forth herein.

137.   Defendants admit that Knoll purports to assert a claim for trademark infringement under 15 U.S.C. § 1125(a).  Defendants deny that Knoll has identified any cognizable trademark in this paragraph.

138.   Defendants deny the allegations in this paragraph, and deny that Knoll has identified any cognizable trademark in this paragraph.

139.  Defendants admit that Mr. Greisman is the CEO of Modway, and the President of LexMod.  Defendants deny the remaining allegations of this paragraph, and deny that Knoll has identified any cognizable trademark in this paragraph.

140.  Defendants deny the allegations of this paragraph, and deny that Knoll has identified any cognizable trademark in this paragraph.

141.  Defendants admit that they have used the name Cyclone in advertising.  Defendants deny the remaining allegations of this paragraph, and deny that Knoll has identified any cognizable trademark in this paragraph.

142.  Defendants deny the allegations of this paragraph.

143.  Defendants deny the allegations of this paragraph.

144.  Defendants deny the allegations in the first sentence of this paragraph. The remaining allegations of this paragraph contain legal conclusions and contentions about the Court's authority in this matter as to which no response is necessary.

145.  Defendants deny the allegations of this paragraph.

146.  Defendants deny the allegations of this paragraph.

## SEVENTH CLAIM FOR RELIEF
**(False Designation of Origin, Passing Off & Federal Unfair Competition)**
**(15 U.S.C. § 1125(a))**

147.   The statement in Paragraph 147 is neither an averment nor allegation to which a response is required.  To the extent that a response is required, Defendants incorporate by reference their responses to the allegations contained in Paragraphs 1-146 as though fully set forth herein.

148.   Defendants admit that Knoll purports to assert a claim for unfair competition, false designation of origin, and passing off under 15 U.S.C. § 1125(a).

149.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress or cognizable trademark in this paragraph.

150.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress or cognizable trademark in this paragraph.

151.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress or cognizable trademark in this paragraph.

152.   Defendants deny the allegations of this paragraph, and deny that Knoll has identified any trade dress or cognizable trademark in this paragraph.

153.   Defendants deny the allegations of this paragraph.

154.   Defendants deny the allegations of this paragraph.

155.   Defendants deny the allegations of this paragraph.

156.    Defendants deny the allegations of this paragraph.

157.    Defendants deny the allegations of this paragraph.

158.    Defendants deny the allegations in the first sentence of this paragraph. The remaining allegations of this paragraph contain legal conclusions and contentions about the Court's authority in this matter as to which no response is necessary.

159.    Defendants deny the allegations of this paragraph.

160.    Defendants deny the allegations of this paragraph.

**EIGHTH CLAIM FOR RELIEF**
**(Unfair Competition)**
**(N.J. Stat. § 56:4-1 & Common Law)**

161.    The statement in Paragraph 161 is neither an averment nor allegation to which a response is required.  To the extent that a response is required, Defendants incorporate by reference their responses to the allegations contained in Paragraphs 1-160 as though fully set forth herein.

162.    Defendants admit that Knoll purports to assert a claim for unfair competition under N.J. Stat. § 56:4-1 and New Jersey common law.

163.    Defendants deny the allegations of this paragraph.

164.    Defendants deny the allegations of this paragraph.

165.    Defendants deny the allegations of this paragraph.

## PRAYER FOR RELIEF

Defendants deny that Knoll is entitled to any relief in this action.

## AFFIRMATIVE DEFENSES

Without admitting or implying that they bear the burden of proof as to any of them, Defendants, on information and belief, assert the following affirmative defenses.  In addition to the defenses described below, Defendants reserve all rights to allege additional defenses.

## FIRST AFFIRMATIVE DEFENSE

1.    Knoll's Third Amended Complaint fails to state a claim against Defendants upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

2.    Knoll has not adequately identified any alleged trade dress.

## THIRD AFFIRMATIVE DEFENSE

3.    Knoll's alleged trade dresses, to the extent it has identified any, are generic.

## FOURTH AFFIRMATIVE DEFENSE

4.    Knoll's alleged trade dresses, to the extent it has identified any, are not inherently distinctive and have not acquired secondary meaning.

## FIFTH AFFIRMATIVE DEFENSE

5.      Knoll's alleged trade dresses, to the extent it has identified any, are functional.

## SIXTH AFFIRMATIVE DEFENSE

6.      Knoll's alleged trademark is generic.

## SEVENTH AFFIRMATIVE DEFENSE

7.      Knoll's alleged trademark is not inherently distinctive and has not acquired secondary meaning.

## EIGHTH AFFIRMATIVE DEFENSE

8.      There is no likelihood of confusion as between Defendants' products and Knoll's products.

## NINTH AFFIRMATIVE DEFENSE

9.      The public will not mistakenly think that Defendants' products derive from the same source as Knoll's products, nor will the public think that Defendants' products or other activities are those of Knoll's or that Knoll authorizes or approves such products or activities.

## TENTH AFFIRMATIVE DEFENSE

10.      The claims made in Knoll's Third Amended Complaint are barred, in whole or in part, by the doctrines of fair use and/or descriptive use.

**ELEVENTH AFFIRMATIVE DEFENSE**

11.    The claims made in the Third Amended Complaint are barred by reason of other parties' use of the alleged trade dresses and alleged trademark (to the extent Knoll has identified any) at issue and/or by Knoll's failure to police.

**TWELFTH AFFIRMATIVE DEFENSE**

12.    Knoll's claims are barred by the equitable doctrine of equitable estoppel.

**THIRTEENTH AFFIRMATIVE DEFENSE**

13.    Knoll's claims are barred by the equitable doctrine of laches.

**FOURTEENTH AFFIRMATIVE DEFENSE**

14.    Knoll's claims are barred by the equitable doctrine of waiver.

**FIFTEENTH AFFIRMATIVE DEFENSE**

15.    Knoll's claims are barred by the equitable doctrine of acquiescence.

**SIXTEENTH AFFIRMATIVE DEFENSE**

16.    Knoll's claims are barred by the equitable doctrine of unclean hands.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

17.    Knoll has sustained no loss or damages as a result of Defendants' alleged conduct.

## EIGHTEENTH AFFIRMATIVE DEFENSE

18.    Knoll has failed to mitigate the damages, if any, that it has allegedly suffered.

## NINETEENTH AFFIRMATIVE DEFENSE

19.    Knoll's claims for injunctive relief are barred because Knoll cannot show that it will suffer any irreparable harm from Defendants' actions.

## TWENTIETH AFFIRMATIVE DEFENSE

20.    The alleged injury or damage suffered by Knoll, if any, would be adequately compensated by damages.  If it has any valid claims, Knoll has a complete and adequate remedy at law and is not entitled to seek equitable relief.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

21.    Without admitting that the Third Amended Complaint states a claim, any remedies are limited to the extent that Knoll seeks an overlapping or duplicative recovery pursuant to the various claims for any alleged single wrong.

\*        \*        \*

Especially given Knoll's refusal to produce discovery in this action, Defendants have insufficient knowledge or information upon which to form a belief as to whether they may have additional, and as yet unstated, defenses available.  Defendants reserve the right to assert such additional defenses in the event that further discovery, investigation or analysis indicate they are proper.

## MODWAY, LEXMOD, AND MR. GREISMAN'S COUNTERCLAIMS

Counterclaimants Modway, Inc. ("Modway"), LexMod, Inc. ("LexMod"), and Menachem T. Greisman (collectively, "Counterclaimants") hereby assert the following counterclaims against Counterdefendant Knoll Inc. ("Knoll" or "Counterdefendant") as follows:

## PARTIES

1.      Modway is a New York corporation with its principal place of business in East Windsor, New Jersey.  Modway is a leading designer, wholesaler, and distributor of furniture.  Modway sells its products to thousands of retailers nationwide.

2.      LexMod is a Florida corporation with its principal place of business in East Windsor, New Jersey.  LexMod is an on-line furniture retailer.  LexMod sells furniture nationwide through its own website as well as on-line marketplaces like Amazon and Google Shopping.

3.      LexMod and Modway have the same owners, and Modway contracts to fill the orders that LexMod receives from consumers, but the two companies are separate entities that operate independently.

4.      Mr. Greisman resides in New York, New York.  Mr. Greisman is the CEO of Modway and the President of LexMod.  Mr. Greisman has an office in East Windsor, New Jersey where he works for Modway and LexMod.

5.      On information and belief, Knoll is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1235 Water Street, East Greenville, Pennsylvania 18041.

6.      Knoll claims to be a global leader in the design and manufacture of commercial and residential furniture, accessories, and coverings.  On information and belief, Knoll was acquired by Herman Miller, Inc. in 2021.  On information and belief, Knoll is now a wholly-owned subsidiary of Herman Miller, Inc.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Modway's, LexMod's, and Mr. Greisman's claims under 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367, and 15 U.S.C. § 1121.

8.      This is a claim for a declaratory judgment under the Trademark Laws of the United States, the Lanham Act, 15 U.S.C. § 1125, *et seq*. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  As an actual justiciable controversy exists by way of Knoll's assertion of claims in this action, Counterclaimants seek relief from this Court.

9.      Personal jurisdiction exists over Knoll because it has participated in conduct or authorized, controlled or ratified the conduct of others as alleged herein,

which conduct has had an effect on Counterclaimants occurring within this District and the State of New Jersey, and by virtue of Knoll asserting claims in its pleadings in this action and prosecuting this action.

10.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Counterclaims occurred within this judicial district, and by virtue of Knoll asserting claims in its pleadings in this action and prosecuting this action.

## GENERAL ALLEGATIONS

11.    These Counterclaims arise from Knoll's misuse of trademark law to corner the market on furniture designs that have long been in the public domain.  It began with a single attempt to overreach.

12.    In July 2017, after ignoring scores of competitors who had marketed nearly identical products for decades, Knoll sought to register as a trade dress the design of a pedestal for a table.  Knoll's application to the United States Patent & Trademark Office ("Trademark Office") proceeded to publication in January 2019, after considerable prosecution during which Knoll misrepresented the state of the market to the trademark examining attorney.

13.    Had the application proceeded to registration, Knoll would have created an improper presumption that the public domain pedestal table design was Knoll's property alone.  Accordingly, Modway, one of many companies in the

market selling similar tables, decided to challenge Knoll's attempt to secure rights over the design, which have been in the public domain for more than 50 years.

14.    In February 2019, Modway filed an opposition in the Trademark Office to Knoll's application.  Knoll dragged its feet for a year in that proceeding, requested numerous continuances, and failed to produce documents in discovery. In particular, Knoll refused to produce a shred of paper regarding its knowledge of the countless similar designs that had been in the marketplace and its failure to police them.

15.    Then, after nearly a year of delay and obstruction (and notwithstanding that it knew countless others had widely sold the subject table base for decades), Knoll retaliated against Modway by filing this action against Modway in November 2019.  Knoll's complaint alleged that Modway infringed the alleged trade dress on the pedestal table base at issue in the Trademark Office.

16.    Even though Knoll is a Delaware corporation headquartered in Pennsylvania, and even though Modway is a New York corporation headquartered in New Jersey, Knoll filed its lawsuit in the Central District of California.

17.    Knoll never served its original complaint on Modway.  Knoll's case languished until the end of January 2020.

18.    Then on January 24, 2020, Knoll escalated matters dramatically. Knoll amended its complaint in Los Angeles to add four additional product lines

(each of which includes multiple disparate furniture pieces) to its single count alleging trade dress infringement. Like Knoll's table base, the designs comprising each of these product lines are in the public domain and many of Knoll's other competitors have been making and selling them for decades.

19.     Knoll also added a claim alleging infringement of an alleged common law trademark, which, notwithstanding that Knoll claims the mark has identified a particular table since at least 1957, Knoll never bothered to register.

20.     Finally, Knoll added two new defendants. Knoll added Modway's affiliate LexMod and added Modway's CEO Menachem Greisman. Adding LexMod and Mr. Greisman to Knoll's case in the Central District of California made no sense. LexMod is a Florida corporation that is headquartered in New Jersey, and Mr. Greisman is a resident of New York City.

21.     Knoll's suit is therefore about Knoll's attempt to stifle competition in the marketplace by locking up designs and product configurations that are widely sold by an entire industry, and Knoll's attempt to punish Modway – and its affiliate and CEO – for having the temerity to challenge Knoll's overreach.

22.     Knoll does not, in fact, have legal rights in any of the designs it has asserted. The public does not associate these designs with Knoll, and Knoll has – to the extent it ever had any rights – slept on them for decades. Knoll thus cannot have the monopoly rights it seeks.

23.     On information and belief, Knoll chose the Central District of California for its litigation because it perceived Ninth Circuit law as more favorable to it than Third Circuit law, and because Knoll sought to maximize the Counterclaimants' burden, expense, and inconvenience.

24.     On information and belief, Knoll attempted to anchor its litigation in the Central District of California by, among other things, making frivolous allegations about Mr. Greisman with regard to personal jurisdiction.  Knoll's allegations, which unreasonably and vexatiously multiplied these proceedings by needlessly adding Mr. Greisman to the case, lacked any evidentiary support.

25.     For example, Knoll alleged that Mr. Greisman "has and continues to routinely travel to California, including to oversee the development and operation of Defendants' warehouse in Fontana, California."  This was false.

26.     Knoll also alleged that Mr. Greisman was "the driving force behind [the Defendants] establishing a warehouse in Fontana, California," and Defendants "using California as one of the hubs for Defendants' infringing activities."  This too was false.  Knoll further alleged that Mr. Greisman was "the driving force and guiding spirit behind Modway's and LexMod's sale of infringing products into California."  This was also false.

27.    The District Judge in the Central District of California ultimately transferred this case from Los Angeles to this District under 28 U.S.C. § 1404. Knoll has now realleged its claims in this Court.

## ALLEGATIONS RELATING TO EXCEPTIONAL CASE

28.    Under 15 U.S.C. § 1117(a), District Courts are authorized to award reasonable attorney's fees to prevailing parties in exceptional cases. Counterclaimants are entitled to their reasonable attorney's fees in this action because of the merits of the positions that Knoll has taken in connection with this dispute, and because Knoll has litigated this case in an unreasonable manner.

29.    As explained above, Knoll filed this case as retribution against Modway because Modway had challenged Knoll's attempt to secure a registration on its alleged Pedestal design.  Knoll had previously slept on its rights for upwards of 60 years while there was industry-wide use of the very designs that Knoll has now asserted for the first time in this action.  Knoll also improperly tried to increase Modway's inconvenience, expenses, and burdens by filing its suit in Los Angeles, rather than in New Jersey, New York, or Pennsylvania (where the parties reside).

30.    Knoll then attempted to punish Modway even further by adding its CEO Mr. Greisman and its affiliate LexMod as defendants in its case.  Knoll tried to bolster its case for venue and jurisdiction in Los Angeles, where it could

maximize the inconvenience and costs incurred by Mr. Greisman, LexMod, and Modway by making false allegations that lacked any evidentiary support regarding Mr. Greisman's connections to California.  Knoll then refused to provide any discovery relating to its frivolous allegations.

31.    Knoll's misconduct has also extended to the prosecution in the Trademark Office of its application for a registration on the Pedestal design. During the prosecution of that application, Knoll filed a Response to Office Action on April 14, 2018, in which it stated: "Applicant is unaware of any third-party tables that have the same distinctive elements comprising its product design."

32.    On information and belief, when Knoll made this statement to the Trademark Office, Knoll was aware of many third-party tables that have the same elements comprising the design, including many third-party tables that were marketed without any reference to Knoll.

33.    On information and belief, Knoll made this false statement with the intent to procure a registration to which Knoll is not entitled.

34.    For these and other reasons, this case is exceptional under 15 U.S.C. § 1117(a).

## FIRST CLAIM FOR RELIEF
### (Declaration of Rights – Pedestal Design)

35.    Counterclaimants reallege and incorporate by reference Paragraphs 1-34 of these Counterclaims.

36.     This is a claim for a declaratory judgment under the Trademark Laws of the United States, the Lanham Act, 15 U.S.C. § 1125, *et seq*. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  As an actual justiciable controversy exists by way of Knoll's assertion of claims in this action, Counterclaimants seek relief from this Court.

37.     Knoll alleges that Counterclaimants have developed, manufactured, imported, advertised, and/or sold products, including the Lippa and Drive lines of products, that infringe Knoll's rights in its so-called "Pedestal Trade Dress."

38.     The furniture developed, manufactured, imported, advertised, and/or sold by Counterclaimants, including the Lippa and Drive lines of products, does not violate Knoll's trade dress rights.

## No Likelihood of Confusion

39.     The development, manufacture, importation, advertising, and/or sale of such furniture does not constitute trade dress infringement, false designation of origin, unfair competition, false or misleading representation or description of fact, or passing off under federal or New Jersey law.

40.     Nor has the development, manufacture, importation, advertising, and/or sale of such furniture confused consumers in the United States or New Jersey as to the source, origin, sponsorship, or affiliation of Counterclaimants'

products.  The development, manufacture, importation, advertising, and/or sale of such furniture is not likely to cause confusion either.

**The Alleged Trade Dress is Generic**

41.    In addition, despite filing four separate pleadings in this case, Knoll has still not adequately alleged any trade dress in connection with its so-called "Pedestal" design.  To the extent that Knoll has identified any alleged trade dress, the Pedestal trade dress would not be enforceable.

42.    The design elements identified by Knoll, taken in isolation or taken all together as a combination, have become generic.  The alleged Pedestal trade dress, to the extent Knoll has identified one, is therefore unenforceable.

**The Alleged Trade Dress Lacks Distinctiveness**

43.    The design elements identified by Knoll, taken in isolation or taken all together as a combination, are also not distinctive.  A product configuration like that asserted here by Knoll can never be inherently distinctive.

44.    Further, the alleged Pedestal trade dress also does not have acquired distinctiveness (*i.e.*, secondary meaning), and did not have acquired distinctiveness when Counterclaimants began to sell or market their Lippa and Drive product lines.  Secondary meaning is only achieved when a design is interpreted by the consuming public to be not only an identification of the product, but also a representation of the origin of such product.

45.     On information and belief, the consuming public does not associate and has not associated the alleged Pedestal trade dress with Knoll or with a particular single source.  To the contrary, on information and belief, over the past 60 years, Knoll has allowed scores of other manufacturers or designers to sell products with a design that is the same as or substantially similar to the alleged Pedestal trade dress.  The design is so common that it does not identify a single source to the minds of the consuming public.

46.     For this reason too, the alleged Pedestal trade dress, to the extent Knoll has identified one, is not enforceable.

**The Design is Functional**

47.     The design elements identified by Knoll for its alleged Pedestal trade dress, taken in isolation or in combination, are also functional.  The Pedestal design is useful, and not merely ornamental, incidental, or an arbitrary aspect of the tables or chairs that bear it.

48.     Indeed, on information and belief, the designer of the alleged Pedestal trade dress, Eero Saarinen, stated that his goal in creating the design was "to address the 'ugly, confusing, unrestful world' he observed underneath chair and tables," which he called the "slum of legs."  Furthermore, the alleged Pedestal trade dress is already the subject of an expired utility patent, namely, U.S. Patent No. 2,981,578.

49.     The alleged Pedestal trade dress, to the extent Knoll has identified one, is therefore unenforceable.

## Knoll Failed to Police and Acquiesced

50.     Moreover, on information and belief, since the 1960s (or even earlier), scores of other manufacturers or designers have sold and marketed products with a design that is the same as or substantially similar to the alleged Pedestal trade dress.  As early as 1964, an article in the New York Times stated that the alleged Pedestal design was a "victim of the knock-off."

51.     On information and belief, Knoll has known of these activities and, until it retaliated against Modway by filing this case, had not sued a single one of these entities.  On information and belief, until August 2020, Knoll had not even sent a cease-and-desist letter to any of these third-party sellers.

52.     Knoll's failure to police its alleged rights and its acquiescence to the marketplace's use of its alleged Pedestal trade dress means that, even if Knoll had identified a trade dress, Knoll has no enforceable rights in the alleged Pedestal trade dress.  The Pedestal design does not identify source.

## Knoll's Claims are Barred by Laches and/or Equitable Estoppel

53.     In addition, the Counterclaimants or their predecessors have sold products with the design of their Lippa and Drive product lines since around 2006.

On information and belief, Knoll has known of Counterclaimants' activities since at least 2009 or 2010.

54.    For example, Knoll sued Mr. Greisman and LexMod (which was then called Executive Chair, Inc.) in 2009 for trademark infringement.  Knoll was at that time aware of Counterclaimants' products with the design of their Lippa and Drive lines, and even filed exhibits in open court showing that LexMod was selling such products.  Knoll nevertheless, in that lawsuit, only asserted its alleged "Barcelona" trade dress and associated trademarks.  Knoll did not assert the alleged Pedestal trade dress that it – in retaliation for Modway's challenge in the Trademark Office – has asserted now.

55.    Knoll's delay in bringing suit against Counterclaimants is inexcusable.  On information and belief, Knoll is a company that has had annual sales exceeding one billion dollars.  Knoll therefore had the resources to sue. Knoll made a conscious decision not to assert its putative Pedestal trade dress against the Counterclaimants for over a decade.

56.    Knoll's delay prejudiced the Counterclaimants.  Given that Knoll delayed bringing suit for more than six years, the law presumes that Counterclaimants have been prejudiced.  In addition, Knoll's delay has caused actual prejudice to the Counterclaimants.

57.     On information and belief, the designer of the alleged Pedestal trade dress, Eero Saarinen, has passed away.  Furthermore, the historical documentation relating to the conception, development, marketing, sales, and enforcement of Knoll's alleged trade dress may no longer exist.  Knoll's counsel in this litigation and in the trademark opposition proceeding have stated that many relevant documents from Knoll's files no longer exist.

58.     The Counterclaimants have also built up and expanded their business in the Lippa and Drive lines over the last more than a decade.  If Knoll had challenged Counterclaimants' designs earlier, Counterclaimants would have had a chance to change their course.  Knoll's inexcusable delay and failure to act deprived Counterclaimants of that opportunity.

59.     Knoll's delay constitutes laches and/or equitable estoppel, which makes the alleged Pedestal trade dress, to the extent Knoll has identified it, unenforceable.

*     *     *

60.     For all of these reasons, standing alone or in combination, Counterclaimants' development, manufacture, importation, advertising, and/or sale of their furniture products does not and will not violate any Knoll rights in the alleged Pedestal trade dress.  Counterclaimants' activities do not (a) constitute unfair competition, false designation of origin, passing off, false or misleading

representation or description of fact, or trade dress infringement in violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)); (b) constitute common law or statutory unfair competition under New Jersey or any other state's law; or (c) otherwise violate state or federal statutory or common law.

61.    Counterclaimants accordingly seek a declaration that Counterclaimants have not infringed Knoll's rights, passed off its goods, or otherwise violated any provision of the Lanham Act, New Jersey common law, or Sections 56:4-1 and 4-2 of the New Jersey Trademark and Unfair Trade Practices Act.

62.    Because this case is exceptional, the Court should award to Counterclaimants their reasonable attorney fees relating to this action.

## SECOND CLAIM FOR RELIEF
### (Declaration of Rights – Executive Design)

63.    Counterclaimants reallege and incorporate by reference Paragraphs 1-62 of these Counterclaims.

64.    This is a claim for a declaratory judgment under the Trademark Laws of the United States, the Lanham Act, 15 U.S.C. § 1125, *et seq*. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  As an actual justiciable controversy exists by way of Knoll's assertion of claims in this action, Counterclaimants seek relief from this Court.

65.     Knoll alleges that Counterclaimants have developed, manufactured, imported, advertised, and/or sold products, including the Cordelia line of products, that infringe Knoll's rights in its so-called "Executive Trade Dress."

66.     The furniture developed, manufactured, imported, advertised, and/or sold by Counterclaimants, including the Cordelia line of products, does not violate Knoll's trade dress rights.

## No Likelihood of Confusion

67.     The development, manufacture, importation, advertising, and/or sale of such furniture does not constitute trade dress infringement, false designation of origin, unfair competition, false or misleading representation or description of fact, or passing off under federal or New Jersey law.

68.     Nor has the development, manufacture, importation, advertising, and/or sale of such furniture confused consumers in the United States or New Jersey as to the source, origin, sponsorship, or affiliation of Counterclaimants' products.  The development, manufacture, importation, advertising, and/or sale of such furniture is not likely to cause confusion either.

## The Alleged Trade Dress is Generic

69.     In addition, despite filing four separate pleadings in this case, Knoll has still not adequately alleged any trade dress in connection with its so-called

"Executive" design. To the extent that Knoll has identified any alleged trade dress, the Executive trade dress would be unenforceable.

70.     The design elements identified by Knoll, taken in isolation or taken all together as a combination, have become generic. The alleged Executive trade dress, to the extent Knoll has identified one, is therefore not enforceable.

**The Alleged Trade Dress Lacks Distinctiveness**

71.     The design elements identified by Knoll, taken in isolation or taken all together as a combination, are also not distinctive. A product configuration like that asserted here by Knoll can never be inherently distinctive.

72.     Further, the alleged Executive trade dress also does not have acquired distinctiveness (*i.e.*, secondary meaning), and did not have acquired distinctiveness when Counterclaimants began to sell or market their Cordelia product line. Secondary meaning is only achieved when a design is interpreted by the consuming public to be not only an identification of the product, but also a representation of the origin of such product.

73.     On information and belief, the consuming public does not associate and has not associated the alleged Executive trade dress with Knoll or with a particular single source. To the contrary, on information and belief, over the past 60 years, Knoll has allowed scores of other manufacturers or designers to sell products with a design that is the same as or substantially similar to the alleged

Executive trade dress.  The design is so common that it does not identify a single source to the minds of the consuming public.

74.    For this reason too, the alleged Executive trade dress, to the extent Knoll has identified one, is not enforceable.

## **The Design is Functional**

75.    The design elements identified by Knoll for its alleged Executive trade dress, taken in isolation or in combination, are also functional.  The Executive design is useful, and not merely ornamental, incidental, or an arbitrary aspect of the chairs that bear it.

76.    Knoll's own pleading concedes that "the Executive Trade Dress was created with the belief that a chair should be comfortable for its shell, rather than the depths of its cushioning."  (Third Amended Complaint, ¶ 33.)

77.    The alleged Executive trade dress, to the extent Knoll has identified one, is therefore not enforceable.

## **Knoll Failed to Police and Acquiesced**

78.    Moreover, on information and belief, since the 1960s (or even earlier), scores of other manufacturers or designers have sold and marketed products with a design that is the same as or substantially similar to the alleged Executive trade dress.

79.     On information and belief, Knoll has known of these activities and, until it retaliated against Modway by filing this case, had not sued a single one of these entities.  On information and belief, until August 2020, Knoll had not even sent a cease-and-desist letter to any of these third-party sellers.

80.     Knoll's failure to police its alleged rights and its acquiescence to the marketplace's use of its alleged Executive trade dress means that, even if Knoll had identified a trade dress, Knoll has no enforceable rights in the alleged Executive trade dress.  The Executive design does not identify source.

## Knoll's Claims are Barred by Laches and/or Equitable Estoppel

81.     In addition, the Counterclaimants or their predecessors have sold products with the design of their Cordelia line since around 2006.  On information and belief, Knoll has known of Counterclaimants' activities since at least 2009 or 2010.

82.     For example, Knoll sued Mr. Greisman and LexMod (which was then called Executive Chair, Inc.) in 2009 for trademark infringement.  Knoll was at that time aware of Counterclaimants' website that listed and depicted the products that they offered.  Knoll nevertheless, in that lawsuit, only asserted its alleged "Barcelona" trade dress and associated trademarks.  Knoll did not assert the alleged Executive trade dress that it – in retaliation for Modway's challenge in the Trademark Office – has asserted now.

83.    Knoll's delay in bringing suit against Counterclaimants is inexcusable.  On information and belief, Knoll is a company that has had annual sales exceeding one billion dollars.  Knoll therefore had the resources to sue. Knoll made a conscious decision not to assert its putative Executive trade dress against the Counterclaimants for over a decade.

84.    Knoll's delay prejudiced the Counterclaimants.  Given that Knoll delayed bringing suit for more than six years, the law presumes that Counterclaimants have been prejudiced.  In addition, Knoll's delay has caused actual prejudice to the Counterclaimants.

85.    On information and belief, the designer of the alleged Executive trade dress, Eero Saarinen, has passed away.  Furthermore, the historical documentation relating to the conception, development, marketing, sales, and enforcement of Knoll's alleged trade dress may no longer exist.  Knoll's counsel in this litigation and in the trademark opposition proceeding have stated that many relevant documents from Knoll's files no longer exist.

86.    The Counterclaimants have also built up and expanded their business in the Cordelia line over the last more than a decade.  If Knoll had challenged Counterclaimants' designs earlier, Counterclaimants would have had a chance to change their course.  Knoll's inexcusable delay and failure to act deprived Counterclaimants of that opportunity.

87.     Knoll's delay constitutes laches and or equitable estoppel which makes the alleged Executive trade dress, to the extent Knoll has identified it, unenforceable.

*     *     *

88.     For all of these reasons, standing alone or in combination, Counterclaimants' development, manufacture, importation, advertising, and/or sale of their furniture products does not and will not violate any Knoll rights in the alleged Executive trade dress.  Counterclaimants' activities do not (a) constitute unfair competition, false designation of origin, passing off, false or misleading representation or description of fact, or trade dress infringement in violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)); (b) constitute common law or statutory unfair competition under New Jersey or any other state's law; or (c) otherwise violate state or federal statutory or common law.

89.     Counterclaimants accordingly seek a declaration that Counterclaimants have not infringed Knoll's rights, passed off its goods, or otherwise violated any provision of the Lanham Act, New Jersey common law, or Sections 56:4-1 and 4-2 of the New Jersey Trademark and Unfair Trade Practices Act.

90.     Because this case is exceptional, the Court should award to Counterclaimants their reasonable attorney fees relating to this action.

## THIRD CLAIM FOR RELIEF
### (Declaration of Rights – Lounge Design)

91.    Counterclaimants reallege and incorporate by reference Paragraphs 1-90 of these Counterclaims.

92.    This is a claim for a declaratory judgment under the Trademark Laws of the United States, the Lanham Act, 15 U.S.C. § 1125, *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  As an actual justiciable controversy exists by way of Knoll's assertion of claims in this action, Counterclaimants seek relief from this Court.

93.    Knoll alleges that Counterclaimants have developed, manufactured, imported, advertised, and/or sold products, including the Loft line of products, that infringe Knoll's rights in its so-called "Lounge Trade Dress."

94.    The furniture developed, manufactured, imported, advertised, and/or sold by Counterclaimants, including the Loft line of products, does not violate Knoll's trade dress rights.

## No Likelihood of Confusion

95.    The development, manufacture, importation, advertising, and/or sale of such furniture does not constitute trade dress infringement, false designation of origin, unfair competition, false or misleading representation or description of fact, or passing off under federal or New Jersey law.

96.    Nor has the development, manufacture, importation, advertising, and/or sale of such furniture confused consumers in the United States or New Jersey as to the source, origin, sponsorship, or affiliation of Counterclaimants' products.  The development, manufacture, importation, advertising, and/or sale of such furniture is not likely to cause confusion either.

**The Alleged Trade Dress is Generic**

97.    In addition, despite filing four separate pleadings in this case, Knoll has still not adequately alleged any trade dress in connection with its so-called "Lounge" design.  To the extent that Knoll has identified any alleged trade dress, the Lounge trade dress would be unenforceable.

98.    The design elements identified by Knoll, taken in isolation or taken all together as a combination, have become generic.  The alleged Lounge trade dress, to the extent Knoll has identified one, is therefore not enforceable.

**The Alleged Trade Dress Lacks Distinctiveness**

99.    The design elements identified by Knoll, taken in isolation or taken all together as a combination, are also not distinctive.  A product configuration like that asserted here by Knoll can never be inherently distinctive.

100.    Further, the alleged Lounge trade dress also does not have acquired distinctiveness (*i.e.*, secondary meaning), and did not have acquired distinctiveness when Counterclaimants began to sell or market their Loft product line.  Secondary

meaning is only achieved when a design is interpreted by the consuming public to be not only an identification of the product, but also a representation of the origin of such product.

101.   On information and belief, the consuming public does not associate and has not associated the alleged Lounge trade dress with Knoll or with a particular single source.  To the contrary, on information and belief, over the past 60 years, Knoll has allowed scores of other manufacturers or designers to sell products with a design that is the same as or substantially similar to the alleged Lounge trade dress.  The design is so common that it does not identify a single source to the minds of the consuming public.

102.   For this reason too, the alleged Lounge trade dress, to the extent Knoll has identified one, is not enforceable.

**The Design is Functional**

103.   The design elements identified by Knoll for its alleged Lounge trade dress, taken in isolation or in combination, are also functional.  The Lounge design is useful, and not merely ornamental, incidental, or an arbitrary aspect of the chairs, sofas, benches, and settees that bear it.

104.   Knoll itself claims that the designer of the Lounge design, Florence Knoll, "always spoke of her products only as practical solutions to the spatial problems of the office, rather than as standalone posterchildren of modern design."

(*See* https://www.knoll.com/knollnewsdetail/introducing-florence-knoll-centennial-designs.)  According to Knoll, "the Lounge Chair, Settee, [and] Sofa all bear clear geometric profiles that celebrate the Bauhaus tenets of rational design, principles that Florence Knoll undoubtedly imbued from her mentor, Mies van der Rohe[.]"  (*Id.*)

105.   The alleged Lounge trade dress, to the extent Knoll has identified one, is therefore not enforceable.

**Knoll Failed to Police and Acquiesced**

106.   Moreover, on information and belief, since the 1960s (or even earlier), scores of other manufacturers or designers have sold and marketed products with a design that is the same as or substantially similar to the alleged Lounge trade dress.

107.   On information and belief, Knoll has known of these activities and, until it retaliated against Modway by filing this case, had not sued a single one of these entities.  On information and belief, until August 2020, Knoll had not even sent a cease-and-desist letter to any of these third-party sellers.

108.   Knoll's failure to police its alleged rights and its acquiescence to the marketplace's use of its alleged Lounge trade dress means that, even if Knoll had identified a trade dress, Knoll has no enforceable rights in the alleged Lounge trade dress.  The Lounge design does not identify source.

## Knoll's Claims are Barred by Laches and/or Equitable Estoppel

109.   In addition, the Counterclaimants or their predecessors have sold products with the design of their Loft line since around 2006.  On information and belief, Knoll has known of Counterclaimants' activities since at least 2009 or 2010.

110.   For example, Knoll sued Mr. Greisman and LexMod (which was then called Executive Chair, Inc.) in 2009 for trademark infringement.  Knoll was at that time aware of Counterclaimants' website that listed and depicted the products that they offered.  Knoll nevertheless, in that lawsuit, only asserted its alleged "Barcelona" trade dress and associated trademarks.  Knoll did not assert the alleged Lounge trade dress that it – in retaliation for Modway's challenge in the Trademark Office – has asserted now.

111.   Knoll's delay in bringing suit against Counterclaimants is inexcusable.  On information and belief, Knoll is a company that has had annual sales exceeding one billion dollars.  Knoll therefore had the resources to sue. Knoll made a conscious decision not to assert its putative Lounge trade dress against the Counterclaimants for over a decade.

112.   Knoll's delay prejudiced the Counterclaimants.  Given that Knoll delayed bringing suit for more than six years, the law presumes that Counterclaimants have been prejudiced.  In addition, Knoll's delay has caused actual prejudice to the Counterclaimants.

113.   On information and belief, the designer of the alleged Lounge trade dress, Florence Knoll, has passed away.  Furthermore, the historical documentation relating to the conception, development, marketing, sales, and enforcement of Knoll's alleged trade dress may no longer exist.  Knoll's counsel in this litigation and in the trademark opposition proceeding have stated that many relevant documents from Knoll's files no longer exist.

114.   The Counterclaimants have also built up and expanded their business in the Loft line over the last more than a decade.  If Knoll had challenged Counterclaimants' designs earlier, Counterclaimants would have had a chance to change their course.  Knoll's inexcusable delay and failure to act deprived Counterclaimants of that opportunity.

115.   Knoll's delay constitutes laches and/or equitable estoppel, which makes the alleged Lounge trade dress, to the extent Knoll has identified it, unenforceable.

\*      \*      \*

116.   For all of these reasons, standing alone or in combination, Counterclaimants' development, manufacture, importation, advertising, and/or sale of their furniture products does not and will not violate any Knoll rights in the alleged Lounge trade dress.  Counterclaimants' activities do not (a) constitute unfair competition, false designation of origin, passing off, false or misleading

representation or description of fact, or trade dress infringement in violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)); (b) constitute common law or statutory unfair competition under New Jersey or any other state's law; or (c) otherwise violate state or federal statutory or common law.

117.    Counterclaimants accordingly seek a declaration that Counterclaimants have not infringed Knoll's rights, passed off its goods, or otherwise violated any provision of the Lanham Act, New Jersey common law, or Sections 56:4-1 and 4-2 of the New Jersey Trademark and Unfair Trade Practices Act.

118.    Because this case is exceptional, the Court should award to Counterclaimants their reasonable attorney fees relating to this action.

## FOURTH CLAIM FOR RELIEF
### (Declaration of Rights – Bertoia Design)

119.    Counterclaimants reallege and incorporate by reference Paragraphs 1-118 of these Counterclaims.

120.    This is a claim for a declaratory judgment under the Trademark Laws of the United States, the Lanham Act, 15 U.S.C. § 1125, *et seq*. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  As an actual justiciable controversy exists by way of Knoll's assertion of claims in this action, Counterclaimants seek relief from this Court.

121.   Knoll alleges that Counterclaimants have developed, manufactured, imported, advertised, and/or sold products, including the CAD line of products, that infringe Knoll's rights in its so-called "Bertoia Trade Dress."

122.   The furniture developed, manufactured, imported, advertised, and/or sold by Counterclaimants, including the CAD line of products, does not violate Knoll's trade dress rights.

**No Likelihood of Confusion**

123.   The development, manufacture, importation, advertising, and/or sale of such furniture does not constitute trade dress infringement, false designation of origin, unfair competition, false or misleading representation or description of fact, or passing off under federal or New Jersey law.

124.   Nor has the development, manufacture, importation, advertising, and/or sale of such furniture confused consumers in the United States or New Jersey as to the source, origin, sponsorship, or affiliation of Counterclaimants' products.  The development, manufacture, importation, advertising, and/or sale of such furniture is not likely to cause confusion either.

**The Alleged Trade Dress is Generic**

125.   In addition, despite filing four separate pleadings in this case, Knoll has still not adequately alleged any trade dress in connection with its so-called

"Bertoia" design.  To the extent that Knoll has identified any alleged trade dress, the Bertoia trade dress would be unenforceable.

126.    The design elements identified by Knoll, taken in isolation or taken all together as a combination, have become generic.  The alleged Bertoia trade dress, to the extent Knoll has identified one, is therefore not enforceable.

**The Alleged Trade Dress Lacks Distinctiveness**

127.    The design elements identified by Knoll, taken in isolation or taken all together as a combination, are also not distinctive.  A product configuration like that asserted here by Knoll can never be inherently distinctive.

128.    Further, the alleged Bertoia trade dress also does not have acquired distinctiveness (*i.e.*, secondary meaning), and did not have acquired distinctiveness when Counterclaimants began to sell or market their CAD product line.  Secondary meaning is only achieved when a design is interpreted by the consuming public to be not only an identification of the product, but also a representation of the origin of such product.

129.    On information and belief, the consuming public does not associate and has not associated the alleged Bertoia trade dress with Knoll or with a particular single source.  To the contrary, on information and belief, over the past 60 years, Knoll has allowed scores of other manufacturers or designers to sell products with a design that is the same as or substantially similar to the alleged

Bertoia trade dress. The design is so common that it does not identify a single source to the minds of the consuming public.

130. For this reason too, the alleged Bertoia trade dress, to the extent Knoll has identified one, is not enforceable.

## The Design is Functional

131. The design elements identified by Knoll for its alleged Bertoia trade dress, taken in isolation or in combination, are also functional. The Bertoia design is useful, and not merely ornamental, incidental, or an arbitrary aspect of the chairs that bear it. The design is already the subject of expired utility patents (*e.g.*, U.S. Patent No. 2,804,915A and U.S. Patent No. 2,763,318A).

132. The alleged Bertoia trade dress, to the extent Knoll has identified one, is therefore not enforceable.

## Knoll Failed to Police and Acquiesced

133. Moreover, on information and belief, since the 1960s (or even earlier), scores of other manufacturers or designers have sold and marketed products with a design that is the same as or substantially similar to the alleged Bertoia trade dress.

134. On information and belief, Knoll has known of these activities and, until it retaliated against Modway by filing this case, had not sued a single one of these entities. On information and belief, until August 2020, Knoll had not even sent a cease-and-desist letter to any of these third-party sellers.

135.   Knoll's failure to police its alleged rights and its acquiescence to the marketplace's use of its alleged Bertoia trade dress means that, even if Knoll had identified a trade dress, Knoll has no enforceable rights in the alleged Bertoia trade dress.  The Bertoia design does not identify source.

**Knoll's Claims are Barred by Laches and/or Equitable Estoppel**

136.   In addition, the Counterclaimants or their predecessors have sold products with the design of their CAD line since around 2006.  On information and belief, Knoll has known of Counterclaimants' activities since at least 2009 or 2010.

137.   For example, Knoll sued Mr. Greisman and LexMod (which was then called Executive Chair, Inc.) in 2009 for trademark infringement.  Knoll was at that time aware of Counterclaimants' website that listed and depicted the products that they offered.  Knoll nevertheless, in that lawsuit, only asserted its alleged "Barcelona" trade dress and associated trademarks.  Knoll did not assert the alleged Bertoia trade dress that it – in retaliation for Modway's challenge in the Trademark Office – has asserted now.

138.   Knoll's delay in bringing suit against Counterclaimants is inexcusable.  On information and belief, Knoll is a company that has had annual sales exceeding one billion dollars.  Knoll therefore had the resources to sue. Knoll made a conscious decision not to assert its putative Bertoia trade dress against the Counterclaimants for over a decade.

139.   Knoll's delay prejudiced the Counterclaimants.  Given that Knoll delayed bringing suit for more than six years, the law presumes that Counterclaimants have been prejudiced.  In addition, Knoll's delay has caused actual prejudice to the Counterclaimants.

140.   On information and belief, the designer of the alleged Bertoia trade dress, Harry Bertoia, has passed away.  Furthermore, the historical documentation relating to the conception, development, marketing, sales, and enforcement of Knoll's alleged trade dress may no longer exist.  Knoll's counsel in this litigation and in the trademark opposition proceeding have stated that many relevant documents from Knoll's files no longer exist.

141.   The Counterclaimants have also built up and expanded their business in the CAD line over the last more than a decade.  If Knoll had challenged Counterclaimants' designs earlier, Counterclaimants would have had a chance to change their course.  Knoll's inexcusable delay and failure to act deprived Counterclaimants of that opportunity.

142.   Knoll's delay constitutes laches and/or equitable estoppel, which makes the alleged Bertoia trade dress, to the extent Knoll has identified it, unenforceable.

*      *      *

143.   For all of these reasons, standing alone or in combination, Counterclaimants' development, manufacture, importation, advertising, and/or sale of their furniture products does not and will not violate any Knoll rights in the alleged Bertoia trade dress.  Counterclaimants' activities do not (a) constitute unfair competition, false designation of origin, passing off, false or misleading representation or description of fact, or trade dress infringement in violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)); (b) constitute common law or statutory unfair competition under New Jersey or any other state's law; or (c) otherwise violate state or federal statutory or common law.

144.   Counterclaimants accordingly seek a declaration that Counterclaimants have not infringed Knoll's rights, passed off its goods, or otherwise violated any provision of the Lanham Act, New Jersey common law, or Sections 56:4-1 and 4-2 of the New Jersey Trademark and Unfair Trade Practices Act.

145.   Because this case is exceptional, the Court should award to Counterclaimants their reasonable attorney fees relating to this action.

## FIFTH CLAIM FOR RELIEF
### (Declaration of Rights – Cyclone Design)

146.   Counterclaimants reallege and incorporate by reference Paragraphs 1-145 of these Counterclaims.

147.    This is a claim for a declaratory judgment under the Trademark Laws of the United States, the Lanham Act, 15 U.S.C. § 1125, *et seq*. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  As an actual justiciable controversy exists by way of Knoll's assertion of claims in this action, Counterclaimants seek relief from this Court.

148.    Knoll alleges that Counterclaimants have developed, manufactured, imported, advertised, and/or sold products, including the Cyclone line of products, that infringe Knoll's rights in its so-called "Cyclone Trade Dress."

149.    The furniture developed, manufactured, imported, advertised, and/or sold by Counterclaimants, including the Cyclone line of products, does not violate Knoll's trade dress rights.

## No Likelihood of Confusion

150.    The development, manufacture, importation, advertising, and/or sale of such furniture does not constitute trade dress infringement, false designation of origin, unfair competition, false or misleading representation or description of fact, or passing off under federal or New Jersey law.

151.    Nor has the development, manufacture, importation, advertising, and/or sale of such furniture confused consumers in the United States or New Jersey as to the source, origin, sponsorship, or affiliation of Counterclaimants'

products.  The development, manufacture, importation, advertising, and/or sale of such furniture is not likely to cause confusion either.

## The Alleged Trade Dress is Generic

152.   In addition, despite filing four separate pleadings in this case, Knoll has still not adequately alleged any trade dress in connection with its so-called "Cyclone" design.  To the extent that Knoll has identified any alleged trade dress, the Cyclone trade dress would be unenforceable.

153.   The design elements identified by Knoll, taken in isolation or taken all together as a combination, have become generic.  The alleged Cyclone trade dress, to the extent Knoll has identified one, is therefore not enforceable.

## The Alleged Trade Dress Lacks Distinctiveness

154.   The design elements identified by Knoll, taken in isolation or taken all together as a combination, are also not distinctive.  A product configuration like that asserted here by Knoll can never be inherently distinctive.

155.   Further, the alleged Cyclone trade dress also does not have acquired distinctiveness (*i.e.*, secondary meaning), and did not have acquired distinctiveness when Counterclaimants began to sell or market their Cyclone product line.  Secondary meaning is only achieved when a design is interpreted by the consuming public to be not only an identification of the product, but also a representation of the origin of such product.

156.   On information and belief, the consuming public does not associate and has not associated the alleged Cyclone trade dress with Knoll or with a particular single source.  To the contrary, on information and belief, over the past 60 years, Knoll has allowed other manufacturers or designers to sell products with a design that is the same as or substantially similar to the alleged Cyclone trade dress.  For example, on information and belief, Modernica sold tables with such a design during a period of time when Knoll was not even selling such a product. The design is so common that it does not identify a single source to the minds of the consuming public.

157.   For this reason too, the alleged Cyclone trade dress, to the extent Knoll has identified one, is not enforceable.

## The Design is Functional

158.   The design elements identified by Knoll for its alleged Cyclone trade dress, taken in isolation or in combination, are also functional.  The Cyclone design is useful, and not merely ornamental, incidental, or an arbitrary aspect of the tables that bear it.

159.   The alleged Cyclone trade dress, to the extent Knoll has identified one, is therefore not enforceable.

**Knoll Failed to Police and Acquiesced**

160.   Moreover, on information and belief, since the 1960s (or even earlier), scores of other manufacturers or designers have sold and marketed products with a design that is the same as or substantially similar to the alleged Cyclone trade dress.

161.   On information and belief, Knoll has known of these activities and, until it retaliated against Modway by filing this case, had not sued a single one of these entities.  On information and belief, until August 2020, Knoll had not even sent a cease-and-desist letter to any of these third-party sellers.

162.   Knoll's failure to police its alleged rights and its acquiescence to the marketplace's use of its alleged Cyclone trade dress means that, even if Knoll had identified a trade dress, Knoll has no enforceable rights in the alleged Cyclone trade dress.  The Cyclone design does not identify source.

**Knoll's Claims are Barred by Laches and/or Equitable Estoppel**

163.   In addition, the Counterclaimants or their predecessors have sold products with the design of their Cyclone line since around 2015.  On information and belief, Knoll has known of Counterclaimants' activities since at least that time.

164.   Knoll's delay in bringing suit against Counterclaimants is inexcusable.  On information and belief, Knoll is a company that has had annual sales exceeding one billion dollars.  Knoll therefore had the resources to sue.

Knoll made a conscious decision not to assert its putative Cyclone trade dress against the Counterclaimants for over a decade.

165.   Knoll's delay prejudiced the Counterclaimants.  On information and belief, the designer of the alleged Cyclone trade dress, Isamu Noguchi, has passed away.  Furthermore, the historical documentation relating to the conception, development, marketing, sales, and enforcement of Knoll's alleged trade dress may no longer exist.  Knoll's counsel in this litigation and in the trademark opposition proceeding have stated that many relevant documents from Knoll's files no longer exist.

166.   The Counterclaimants have also built up and expanded their business in the Cyclone line over the last more than a decade.  If Knoll had challenged Counterclaimant' designs earlier, Counterclaimants would have had a chance to change their course.  Knoll's inexcusable delay and failure to act deprived Counterclaimants of that opportunity.

167.   Knoll's delay constitutes laches, which makes the alleged Cyclone trade dress, to the extent Knoll has identified it, unenforceable.

*        *        *

168.   For all of these reasons, standing alone or in combination, Counterclaimants' development, manufacture, importation, advertising, and/or sale of their furniture products does not and will not violate any Knoll rights in the

alleged Cyclone trade dress.  Counterclaimants' activities do not (a) constitute

unfair competition, false designation of origin, passing off, false or misleading

representation or description of fact, or trade dress infringement in violation of

Lanham Act § 43(a) (15 U.S.C. § 1125(a)); (b) constitute common law or statutory

unfair competition under New Jersey or any other state's law; or (c) otherwise

violate state or federal statutory or common law.

169.    Counterclaimants accordingly seek a declaration that

Counterclaimants have not infringed Knoll's rights, passed off its goods, or

otherwise violated any provision of the Lanham Act, New Jersey common law, or

Sections 56:4-1 and 4-2 of the New Jersey Trademark and Unfair Trade Practices

Act.

170.    Because this case is exceptional, the Court should award to

Counterclaimants their reasonable attorney fees relating to this action.

## SIXTH CLAIM FOR RELIEF
### (Declaration of Rights – CYCLONE Mark)

171.    Counterclaimants reallege and incorporate by reference Paragraphs 1-

170 of these Counterclaims.

172.    This is a claim for a declaratory judgment under the Trademark Laws

of the United States, the Lanham Act, 15 U.S.C. § 1125, *et seq*. and the

Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  As an actual justiciable

controversy exists by way of Knoll's assertion of claims in this action, Counterclaimants seek relief from this Court.

173.   Knoll alleges that Counterclaimants have developed, manufactured, imported, advertised, and/or sold products, including the Cyclone line of products, that infringe Knoll's rights in its so-called "CYCLONE Mark."

174.   The furniture developed, manufactured, imported, advertised, and/or sold by Counterclaimants, including the Cyclone line of products, does not violate Knoll's trademark rights.

## No Likelihood of Confusion

175.   The development, manufacture, importation, advertising, and/or sale of such furniture does not constitute trademark infringement, false designation of origin, unfair competition, false or misleading representation or description of fact, or passing off under federal or New Jersey law.

176.   Nor has the development, manufacture, importation, advertising, and/or sale of such furniture confused consumers in the United States or New Jersey as to the source, origin, sponsorship, or affiliation of Counterclaimants' products.  The development, manufacture, importation, advertising, and/or sale of such furniture is not likely to cause confusion either.

**The Alleged Trademark is Generic**

177.   The alleged CYCLONE Mark has become generic.  The alleged CYCLONE Mark is therefore not enforceable.

**The Alleged Trademark Lacks Distinctiveness**

178.   The alleged CYCLONE Mark is also not inherently distinctive.

179.   Further, the alleged CYCLONE Mark also does not have acquired distinctiveness (*i.e.*, secondary meaning), and did not have acquired distinctiveness when Counterclaimants began to sell or market their Cyclone product line. Secondary meaning is only achieved when a mark is interpreted by the consuming public to be not only an identification of a product, but also a representation of the origin of such product.

180.   On information and belief, the consuming public does not associate and has not associated the alleged CYCLONE Mark with Knoll or with a particular single source.  To the contrary, on information and belief, over the past 60 years, Knoll has allowed many other manufacturers or designers to sell products with a mark that is the same as or substantially similar to the alleged CYCLONE Mark. For example, on information and belief, Modernica sold tables with the name CYCLONE during a period of time when Knoll was not even selling such a product.  The word is so common that it does not identify a single source to the minds of the consuming public.

181.   For this reason too, the alleged CYCLONE Mark is not enforceable.

**Knoll Failed to Police and Acquiesced**

182.   Moreover, on information and belief, since the 1960s (or even earlier), many other manufacturers or designers have sold and marketed products with a mark that is the same as or substantially similar to the alleged CYCLONE Mark.

183.   On information and belief, Knoll has known of these activities and, until it retaliated against Modway by filing this case, had not sued a single one of these entities.  On information and belief, until August 2020, Knoll had not even sent a cease-and-desist letter to any of these third-party sellers.

184.   Knoll's failure to police its alleged rights and its acquiescence to the marketplace's use of its alleged CYCLONE Mark means that Knoll has no enforceable rights in the alleged CYCLONE Mark.  The alleged CYCLONE Mark does not identify source.

**Knoll's Claims are Barred by Laches and/or Equitable Estoppel**

185.   In addition, the Counterclaimants or their predecessors have sold products with the design of their Cyclone line under the Cyclone name since around 2015.  On information and belief, Knoll has known of Counterclaimants' activities since that time.

186.   Knoll's delay in bringing suit against Counterclaimants is inexcusable.  On information and belief, Knoll is a company that has had annual

sales exceeding one billion dollars.  Knoll therefore had the resources to sue.

Knoll made a conscious decision not to assert its putative CYCLONE Mark against

the Counterclaimants for over a decade.

187.   Knoll's delay prejudiced the Counterclaimants.  On information and

belief, the historical documentation relating to the conception, development,

marketing, sales, and enforcement of Knoll's CYCLONE-related products and

alleged mark may no longer exist.  Knoll's counsel in this litigation and in the

trademark opposition proceeding have stated that many relevant documents from

Knoll's files no longer exist.

188.   The Counterclaimants have also built up and expanded their business

in the Cyclone line over the last more than a decade.  If Knoll had challenged

Counterclaimants' use of the Cyclone name earlier, Counterclaimants would have

had a chance to change their course.  Knoll's inexcusable delay and failure to act

deprived Counterclaimants of that opportunity.

189.   Knoll's delay constitutes laches and/or equitable estoppel, which

makes the alleged CYCLONE Mark unenforceable.

*     *     *

190.   For all of these reasons, standing alone or in combination,

Counterclaimants' development, manufacture, importation, advertising, and/or sale

of their furniture products does not and will not violate any Knoll rights in the

alleged CYCLONE Mark. Counterclaimants' activities do not (a) constitute unfair competition, false designation of origin, passing off, false or misleading representation or description of fact, or trademark infringement in violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)); (b) constitute common law or statutory unfair competition under New Jersey or any other state's law; or (c) otherwise violate state or federal statutory or common law.

191.   Counterclaimants accordingly seek a declaration that Counterclaimants have not infringed Knoll's rights, passed off its goods, or otherwise violated any provision of the Lanham Act, New Jersey common law, or Sections 56:4-1 and 4-2 of the New Jersey Trademark and Unfair Trade Practices Act.

192.   Because this case is exceptional, the Court should award to Counterclaimants their reasonable attorney fees relating to this action.

## **PRAYER FOR RELIEF**

Wherefore, Counterclaimants pray for judgment against Knoll as follows:

A.     That Knoll take nothing by way of the Third Amended Complaint;

B.     That the Court declare that Counterclaimants' development, manufacture, importation, advertising, marketing and/or sale of their furniture products, including their Lippa, Drive, Cordelia, Loft, CAD, and Cyclone products, does not and will not (a) constitute unfair competition, false designation of origin,

81

passing off, false or misleading representation or description of fact, trade dress infringement, or trademark infringement in violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)); (b) constitute common law or statutory unfair competition under New Jersey or any other state's law; or (c) otherwise violate state or federal statutory or common law;

C.      That the Court declare that Knoll does not have any valid or enforceable trade dress rights in its alleged Pedestal, Loft, Executive, Cyclone and/or Bertoia designs because the alleged trade dresses are generic, not distinctive, and functional, because Knoll has failed to police its alleged rights, and because Knoll is guilty of laches and/or subject to equitable estoppel;

D.      That the Court declare that Knoll does not have any valid or enforceable trademark rights in its alleged CYCLONE Mark because the alleged mark is generic and not distinctive, because Knoll has failed to police its alleged rights, and because Knoll is guilty of laches;

E.      That the Court enter judgment against Knoll in favor of Counterclaimants, in an amount to be determined at trial, including the remedies set forth in 15 U.S.C. §§ 1117;

F.      That the Court declare that Knoll and each of its officers, directors, employees, agents, consultants, attorneys, parents, subsidiaries, and any persons in active concert or participation with it be restrained and enjoined from further

harassing, prosecuting or instituting any action against Counterclaimants, their customers, retailers, distributors, suppliers, or manufacturers claiming that Counterclaimants are infringing or violating any trademark or trade dress rights of Knoll;

G.    That the Court declare that this is an exceptional case under 15 U.S.C. § 1117(a) and award to Counterclaimants their reasonable attorney fees and other costs and expenses pursuant to 15 U.S.C. § 1117(a) and all other applicable statutes, rules and common law; and

H.    For such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Counterclaimants hereby demand a trial by jury in this action on all claims and issues  triable before a jury.

Dated: July 5, 2022

Respectfully Submitted,

SCHNADER HARRISON SEGAL & LEWIS LLP

*/s/ Lisa J. Rodriguez*
Lisa J. Rodriguez
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
Phone: (856) 482-5222
Fax: (856) 482-6980
ljrodriguez@schnader.com
*Attorney for Defendants*

*OF Counsel*:

Sherman W. Kahn (admitted *pro hac vice*)
MAURIEL KAPOUYTIAN WOODS LLP
15 W. 26th Street, 7th Floor
New York, NY  10010
Tel:  (212) 529-5131

Marc J. Pernick (admitted *pro hac vice*)
MAURIEL KAPOUYTIAN WOODS LLP
450 Sansome Street, Suite 1005
San Francisco, CA  94111
Tel:  (415) 738-6228